IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

KENNETH G.,

        Plaintiff,

v.

ANDREW SAUL, Commissioner
of Social Security,[1]

        Defendant.

Civil Action No.
5:18-CV-0435 (DEP)

APPEARANCES:

FOR PLAINTIFF

OLINSKY LAW GROUP
300 S. State Street
Suite 420
Syracuse, NY 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH
United States Attorney for the
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OF COUNSEL:

HOWARD D. OLINSKY, ESQ.
MELISSA A. PALMER, ESQ.

LUCY WEILBRENNER, ESQ.
Special Assistant U.S. Attorney

---

[1] Plaintiff's complaint named Nancy A. Berryhill, as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on August 22, 2019, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: August 28, 2019
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KENNETH G.,
                                        Plaintiff,

-v-                                     5:18-CV-435

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
August 22, 2019
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    OLINSKY LAW GROUP
    300 South State Street
    Suite 420
    Syracuse, New York 13202
    BY: **MELISSA A. PALMER, ESQ.**

For the Defendant:
(Appearance by telephone)

    U.S. SOCIAL SECURITY ADMINISTRATION
    625 JFK Building
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY: **LUCY WEILBRENNER, ESQ.**


*Hannah F. Cavanaugh, RPR, CSR, NYACR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

                (In chambers.  Counsel present by telephone.  Time noted:  11:25 a.m.)

                THE COURT:  I have before me a request for judicial review of an adverse determination by the Commissioner pursuant to 42, United States Code, Sections 405(g) and 1383(c)(3).

                The background is as follows:  Plaintiff was born in April of 1976 and is currently 43 years of age.  He was 38 years old, if I read my notes correctly, at the time of the onset of his disability on June 6, 2014.  He stands between 5'10" and 6'0", depending upon the record that you look at, in height and between 150 and 165 pounds, again, depending on which record you rely on.  Plaintiff is right-handed.  He has a 9th education.  While in school, he was in special education classes with assistance in math and reading.  Plaintiff lives sometimes in an apartment with his girlfriend, two children, and a 14-month-old who, although it's unclear, I presume might be a grandchild.  He sometimes lives with his sister.  Plaintiff has a driver's license, but has not driven and does not drive due to his seizures.

                Plaintiff stopped working in June of 2014.  Prior to that time, he worked as a cow herdsman in 2003 where he milked and cleaned cows; 2004, as a snowmaker at a ski resort; 2011, he worked as a roofer and a framer; 2012, as a tractor operator on a crop farm; 2014, he worked for three months as a fieldworker on a crop farm and also two months as a parts washer in a

factory.

Medically, plaintiff suffers from both mental and physical impairments. Mentally, he has been diagnosed as having bipolar disorder, posttraumatic stress disorder, and depression. He receives treatment from Family Counseling Services of Cortland County. He was evaluated in August of 2014 by Licensed Clinical Social Worker Alison Christiansen and Susan Williams, as well as Dr. Robert Webster and Nurse Practitioner Melanie Novick.

Physically, plaintiff suffers from a seizure disorder. He receives treatment from Dr. Jody Stackman. Admittedly, the records are very clear that plaintiff is a poor historian when it comes to recounting his seizure history. He had a one-page seizure log from May and June of 2015 at page 421, and at 651, 652, and 448, it recounts that he is a poor historian.

He has received treatment at Cortland Hospital for a variety of things, including on March 17, 2015, and January 5, 2016, for seizures. Plaintiff was also evaluated on February 24, 2016, at Upstate Medical Center by Dr. Rebecca Gavett who is apparently a Ph.D., a psychologist.

Plaintiff smokes one pack of cigarettes per day. In terms of medication, he has been prescribed Depakote, Busbar, Remeron, Lamictal, Tegretol, Lamotrigine, Prazosin, Keppra, Ambien, Propranolol, Seroquel, Prozac, Gabapentin, and

1  Sertraline.

2  In terms of activities of daily living, plaintiff testifies that he lays on the couch and recounted to the consultative examiners that he lays on the couch, watches television, watches the baby, plays with the baby, listens to the radio, can dress, bathe, groom, cook, clean, do laundry, shop, and he socializes. Plaintiff apparently has been sent to prison on two separate occasions, one for driving while intoxicated and one for attempted arson.

10  In terms of procedural history, plaintiff applied for Title II and Title XVI benefits on June 17, 2014. It appears, although the record doesn't contain any indication otherwise, that a prior claim for benefits was denied. That appears at page 228. Plaintiff alleged an onset disability date of June 6, 2014, and claimed a disability based on seizures, anxiety, a sleep disorder, bipolar disorder, and depression.

17  A hearing was conducted by Administrative Law Judge Michael Carr on August 9, 2016. ALJ Carr issued a decision on December 14, 2016, finding the plaintiff was not disabled at the relevant times and therefore ineligible for the benefits sought. The Social Security Administration Appeals Council denied plaintiff's request for review on February 5, 2018.

23  In his decision, ALJ Carr applied the five step familiar sequential test for evaluating claims of disability. At step one, he concluded plaintiff was not gainfully employed

since June 6, 2014. He did note that plaintiff was insured through December 31, 2017.

ALJ Carr, at step two, concluded that plaintiff suffers from severe impairments, including posttraumatic stress disorder, bipolar disorder, and seizure disorder.

He concluded at step three that those impairments did not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically addressing listings 12.04 and 12.06, and going through the evaluation of whether or not the B and C criteria of those listings were met. The ALJ next concluded that plaintiff retained the residual functional capacity, or RFC, to perform a full range of work at all exertional levels with certain nonexertional limitations which are set forth at page 19 of the Administrative Transcript.

At step four, the Administrative Law Judge concluded that plaintiff is not able to perform his past relevant work due to the limitations found in the RFC.

At step five he concluded, with the assistance of a vocational expert's testimony, that plaintiff is capable of performing jobs within the national economy and representative of those jobs were hand packager, a cleaner, sewing machine operator, and marketing clerk/ticket maker.

As you know, my role is limited and the standard that I apply is extremely deferential. I must determine whether

1  correct legal principles were applied and the determination is
2  supported by substantial evidence, which is defined as such
3  evidence as a reasonable factfinder would find sufficient to
4  support a conclusion.  I also decide the case against the
5  backdrop of plaintiff's burden through step four of establishing
6  limitations under *Poupore*.
7           The first argument concerns the Administrative Law
8  Judge's admitted failure to consider listing 11.02, which deals
9  with epilepsy.  The focus of the listing analysis of the
10 Administrative Law Judge was on plaintiff's mental and not
11 physical or neurological condition, and that's potentially
12 explained by the fact that the agency experts at Exhibits 1A and
13 2A considered plaintiff's seizures as nonsevere, that's at 85
14 and 97, but the Administrative Law Judge, at step two, did find
15 severity.
16          The case law is very clear, dating back to at least
17 1982; the Second Circuit's decision in *Berry v. Schweiker*, 675
18 F.2d 464, where -- that listings should specifically be
19 considered and decisions of an ALJ should recite that listings
20 have been considered.  The Second Circuit in that case gave the
21 following admonition, "Thus, in future cases in which the
22 disability claim is premised upon one or more listed impairments
23 of Appendix 1, the Secretary should set forth the sufficient
24 rationale in support of his decision to find or not to find a
25 listed impairment."

1  That admonition has been followed in such cases as
2  *Barnes v. Astrue*, not reported but found, at 2014 WL 297099 from
3  the Western District of New York, in which Judge Arcara made the
4  following statement, "In considering whether a claimant's
5  condition meets or equals the listed impairment, the ALJ must
6  discuss the listing by name and offer more than a perfunctory
7  analysis of the listing," and that's a quote from a decision
8  from the Eastern District of Wisconsin.  He goes on to quote
9  another quote further from that case, "Failure to mention
10 specific listings, if combined with a perfunctory analysis, may
11 require a remand."
12          And the Southern District of New York in *Norman v.*
13 *Astrue*, 912 F. Supp. 2d 33, echoed after citing from *Berry*, the
14 Court -- in that case in light of the ALJ's failure to explain
15 his reasoning and the conflicting medical evidence, the Court
16 was unable to conclude that the decision was supported by
17 substantial evidence and ordered a remand.
18          Plaintiff argues, and there is some evidence that
19 could support a finding of either meeting or medically equaling
20 listings 11.02A and 11.02B; A deals with generalized
21 tonic-clonic seizures; B, dyscognitive seizures.  Admittedly,
22 the plaintiff is not a wonderful historian of his seizures and
23 in December of 2014, an EEG performed found no epileptic form
24 activity.  However, there is a great deal of information in the
25 record concerning seizures that suggests that plaintiff's

HANNAH F. CAVANAUGH, RPR, CSR, NYACR
Official U.S. Court Reporter

1  seizures could meet the frequency requirements of 11.02A and/or
2  B.
3            At 8F, plaintiff lists three seizures from May and
4  June of 2015.  On March 17, 2015, while in the emergency room,
5  plaintiff suffered a grand mal seizure.  It is true that there's
6  a reference to the possibility that it is related to alcohol
7  withdrawal.  There's an emergency room record from January 5,
8  2016, that suggests the existence of a tonic-clonic seizure with
9  incontinence.  Dr. Stackman's medical source statement from
10 August of 2016 suggests that plaintiff suffers from one seizure
11 a week, that's at 645, that can last minutes.  On August 31,
12 2015, plaintiff told Dr. Stackman that he had suffered four
13 seizures in the past week.  That's at 637.  On February 24,
14 2016, Dr. Gavett noted plaintiff reported four seizures in the
15 last six months that sounded like dyscognitive seizures.  On
16 August 2, 2016, a seizure, which sounded like a dyscognitive
17 seizure, lasting three minutes was observed at Family Services,
18 that's at 643.  At the hearing, plaintiff testified that he
19 suffers one seizure every two to three days and one time per
20 week even on meds, that's at page 52.  At December 12, 2014, Dr.
21 Stackman diagnosed partial complex seizures or indicated that
22 the reports suggested the existence of partial complex seizures,
23 which would fall within the definition under 11.00 dyscognitive
24 seizures, or could.  On June 6, 2014, plaintiff reported three
25 seizures in the past two weeks to a Nurse Practitioner, that's

at 407.  On December 17, 2015, plaintiff reported a one time per week seizure frequency to Nurse Practitioner Novick, that's at 544.  On April 4, 2016, he again reported one seizure per week for every week or bi-weekly to Nurse Practitioner Novick, that's at 553.

So there's certainly evidence that should have been considered and there should have been a lucid analysis of whether or not the reported frequency of seizures from these various sources, the girlfriend, treating source, and the plaintiff himself, could meet or medically equal either 11.02A or 11.02B.  It is clearly a nuanced analysis that would be required and it is complex concerning the issue of both the nature of the seizures and whether they are tonic-clonic or dyscognitive, and also the number, and, further, the treatment and whether plaintiff was compliant with his prescribed medication, so that is what I would have been looking for in an Administrative Law Judge's decision.

I've scoured Administrative Law Judge Carr's decision and I don't find the analysis sufficient to tell me that he properly rejected 11.02 as a listed impairment, so I won't directly address the second argument, although I think that there is some merit to the argument that Dr. Stackman's opinions were not properly considered.

In any event, I think that the matter should be remanded for a fulsome consideration of whether plaintiff's

1  condition meets or medically equals listing 11.02.  I don't find
2  persuasive evidence of disability and so I will not make a
3  directed finding, but I will grant judgement on the pleadings to
4  the plaintiff, vacate the Commissioner's determination, and
5  direct that the matter be remanded for further consideration
6  consistent with this opinion.
7           Thank you both for excellent arguments.  This was a
8  very interesting case.  I hope you all have a good rest of your
9  summer.
10           MS. PALMER:  Thank you, your Honor.
11           MS. WEILBRENNER:  Thank you, your Honor.  You, too.
12           (Time noted:  11:43 a.m.)

1
2       CERTIFICATE OF OFFICIAL REPORTER
3
4
5            I, HANNAH F. CAVANAUGH, RPR, CSR, NYACR, Official
6  U.S. Court Reporter, in and for the United States District Court
7  for the Northern District of New York, DO HEREBY CERTIFY that
8  pursuant to Section 753, Title 28, United States Code, that the
9  foregoing is a true and correct transcript of the
10 stenographically reported proceedings held in the above-entitled
11 matter and that the transcript page format is in conformance
12 with the regulations of the Judicial Conference of the United
13 States.
14
15                    Dated this 28th day of August, 2019.
16
17                    x *Hannah F. Cavanaugh*
18                    HANNAH F. CAVANAUGH, RPR, CSR, NYACR
19                    Official U.S. Court Reporter
20
21
22
23
24
25